Christopher Gullman, Respondent, v. John M. Sharp, Appellant, Impleaded with Others.

*Appurtenance defined—joint owners— the act of one, in selling property not owned by them, not imputed to the other.*

An appurtenance is a thing used with and related to or dependent upon another thing more worthy, and agreeing in its nature and quality with the thing whereunto it is appendant or appurtenant; a thing belonging to another thing as principal, and which passes as incident to the principal thing.

An appurtenance to a dredge must be something needful in the work of dredging, and where a suction pump is temporarily placed upon a dredge, the conveyance of the dredge and appurtenances will not include the suction pump upon the same, in the absence of evidence showing an intention of the parties to convey the suction pump as well as the dredge.

The act of one of two joint owners of a dredge, on which a suction pump leased by them has been temporarily placed, in selling and delivering the suction pump to a third person, cannot, by reason of such relation, and in the absence of other authority to do so, be imputed to the other joint owner.

Appeal by the defendant, John M. Sharp, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 10th day of May, 1894, upon the verdict of a jury rendered after a trial at the New York Circuit, and also from an order entered in said clerk's office on the 25th day of May, 1894, denying the defendant's motion for a new trial made upon the minutes.

*Rochfort & Stayton*, for the appellant.

*Robert W. Todd*, for the respondent.

Parker, J.:

The judgment under review awards damages to the plaintiff for the alleged conversion of a suction pump, built for the purpose of throwing mud over a sea wall. The defendants were sued as joint tort feasors, but only the defendant Sharp was served, and the judgment is against him alone. The act of conversion alleged against the defendant is that he sold and delivered the pump to one Stevens. He testified that he had no intention of selling the pump, and no word of his was proved in contradiction of his statement, unless it may be found in the written contract of sale executed by Sharp and the other defendants.

Before referring to the contract of sale, some of the facts which led up to it should be stated.

In the year 1891 the firm of J. A. Mundy & Co. were engaged in dredging the harbor of Philadelphia, under a contract with the United States government. Sharp was not a member of the firm, but the contract required that a bond, in the penal sum of $500,000, should be given for the faithful performance of its provisions by Mundy & Co., and upon this bond defendant Sharp was a surety. The bond provided, among other things, that the sureties should be liable in case of the failure of complete performance within the time stipulated in the contract.

The work progressed so slowly that the sureties became concerned lest they should be compelled to respond in damages, by reason of a failure to perform within the stipulated time, and were accordingly induced to unite with Mr. Mundy, one of the firm of contractors, in the purchase of a plant to be used in pushing the work to completion. The plant purchased included a dredge known as the " Big Jim," for which they paid about $14,000. About the time of such purchase Mundy & Co. entered into a contract with the plaintiff Gullman to make a pump at League Island to be used in pumping over a sea wall to the lowlands mud to be dredged from the river and to be deposited near the pump. Upon the arrival of the dredge " Big Jim," Mundy & Co. gave Gullman the privilege of using it as a platform on which to place his pump.

It was put on the " Big Jim " by Gullman, where it remained until after the making of the contract, by which it was contended Sharp sold the pump to Stevens. It is nowhere intimated that it was the intention of any of the parties that the connection thus temporarily formed between the pump and the dredge was to continue beyond the period of plaintiff's pumping operations. Later in the season of 1891 Mundy & Co. built another pump known as the big pump, the completion of which was substantially like that of the Gullman pump. The big pump was not put on a dredge, but placed on a caisson built for the purpose.

In the winter of 1891 and 1892 Mr. Stevens sub-contracted with Mundy & Co. to do all the work yet to be done under the contract of that company with the government.

Simultaneously, another agreement was entered into between Ste-

·vens on the one hand, and Mundy, Sharp and Busch on the other (Sharp and Busch being sureties on the contract for Mundy & Co.), by. which was sold to Stevens the plant that they had bought for use in connection with the work. It reads as follows :

"Agreement made this 2d day of February, 1892, between James A. Mundy, John M. Sharp and Clarence M. Busch (sole stockholders of the Philadelphia Dredging Co.), parties of the first part, and C. Amory Stevens, party of the second part.

"The parties of the first part hereby sell and transfer to the parties of the second part all their interest in the following described plant, now employed on the work of improving the Philadelphia harbor : The plant known as the Thompson plant, and consisting of the dredge 'Columbus,' the dredge 'Norwalk,' the dredge 'American,' the tugboat 'James Bowen,' and thirteen scows.

"The plant known as the Philadelphia plant, and consisting of the dredge 'Starbuck,' the launch 'Governor Beaver,' the 'Big Jim' and appurtenances, the new pump, known as the 'big pump,' with its boilers, caisson and appurtenances, together with three scows, and all fittings, appurtenances, plant and apparatus owned by the parties of the first part, or the Philadelphia Dredging Company, and purchased or acquired for us in performing the work of improving the harbor of ·Philadelphia under the contract between the War Department and James A. Mundy & Co."

It is claimed that under this contract two pumps similar in construction and situated near to each other were sold to Stevens.

As we read the contract it is difficult to discover any basis for this claim. The contract in terms only purports to transfer one pump, which it describes as the "big pump, with its boilers, caisson and appurtenances." It is conceded that this description does not include plaintiff's pump. The claim is that this pump, which the jury valued at $3,200, was transferred by the words "and appurtenances" contained in this phrase : "Consisting of the dredge 'Starbuck,' launch 'Governor Beaver,' the 'Big Jim' and appurtenances."

In the first place, the difference in the language employed in describing the dredge "Big Jim," and that which refers to the big pump, strongly indicates that the parties to the contract did not intend to ‟include plaintiff's pump in the following words : "Big Jim and appurtenances."

In describing the big pump, which the parties of the first part unquestionably owned, it is called "the new pump, known as the big pump, with its boilers, caisson and appurtenances." But the caisson for the big pump sustained the identical relation to it which the dredge "Big Jim" did to the Gullman (plaintiff's pump); and if the words "Big Jim and appurtenances" included the Gullman pump, it would follow that the words "caisson and appurtenances" would have included the big pump. The full and specific description of the big pump and its "appurtenances" strongly indicates that it was not intended by the contract to transfer the Gullman pump as an appurtenant of the "Big Jim." But aside from the fact that the language of the contract indicates that it was intended to pass the title to but one of the two pumps then located near together, the words "and appurtenances" cannot be held to include this valuable pump, which constituted no part whatever of the outfit of the dredge "Big Jim," to which it was temporarily attached. The words are not ambiguous in the sense in which they were here employed, but instead have a definite and well-defined meaning.

An appurtenance is "a thing used with and related to or dependent upon another thing more worthy, and agreeing in its nature and quality with the thing whereunto it is appendant or appurtenant. A thing belonging to another thing as principal, and which passes as incident to the principal thing." (Am. & Eng. Ency. of Law, 641.)

An appurtenant to a dredge must be something incidental to and needful in the work of dredging. With such work plaintiff's suction pump had nothing whatever to do, and the actual effect of putting it on the dredge "Big Jim" was to prevent its use for dredging purposes during the time they were connected.

Mr. Parsons in his work on Maritime Laws, after considering a number of cases in which had been discussed what constituted an appurtenance to a ship, said: "It would seem to be deducible from these cases that nothing is to be considered an appurtenance of a ship unless requisite to its proper use, although connected with it at the time." (Parsons' Mar. Laws, 72, note).

While we are convinced that the written contract does not include the Gullman pump, and the record persuades us that it was never

Sharp's intention to sell it to Stevens, we are nevertheless of the opinion that there was evidence to support the verdict.

The testimony of Stevens and Capt. Collins was to the effect that at the time of the oral negotiations which were had with Mundy and Stayton, who represented the owners of the property, it was stated by them that Mundy, Busch and Sharp had furnished a large part of the money which had been expended in constructing the Gullman pump, and that out of the moneys to be paid by Stevens for the plant Gullman should be paid for his interest and the pump should go to Stevens as part of the plant. This statement suggests that possibly the evidence should not have been received on the ground that the oral negotiations became merged in the subsequently executed written agreement, but our attention is not called to any exception taken to its admission. It was contradicted by Mundy and Stayton, but we must assume that the jury found in plaintiff's favor.

This evidence is followed by the testimony of Stevens and Capt. Collins, to the effect that in pursuance thereof, all of the property, including the Gullman pump, was delivered to Stevens by Mundy, one of the owners.

On cross-examination Mundy testified as follows : " I turned over the material and plant which was sold on the contract of February 2nd, to Mr. Stevens. I turned them over to Capt. Collins and Mr. Stevens. I know Mr. Stevens was present. I turned over to him the ' Big Jim.' Q. Didn't you turn over what was on her to them ? A. Do you mean the Gullman pump ? Q. Everything that was on her ? A. Yes ; we turned over everything that was on the ' Big Jim ' to Capt. Collins and Mr. Stevens. We turned the ' Big Jim ' over just as she stood."

The jury was, therefore, permitted to find a delivery of the property to Stevens by Mundy. It is true, as appellant suggests, that as Mundy was not a partner of Sharp, but simply a joint owner of the property with him, his relation to the property did not authorize him to deliver something which Sharp did not own and had no right to sell, and if he had no other authority, his act in turning over the property could not have been imputed to Sharp.

But Sharp testified that Mundy acted for him in turning over the property. He said : " I was not present when the money

was paid, and as far as turning over the plant I had nothing to do with that.   Q.  Who was that left to ?   A.  Mr. Mundy took charge of that.   He was to turn the plant over to Mr. Stevens under that contract, and acted for me in that capacity.'"

The evidence, therefore, presented questions for the jury, which, being found in plaintiff's favor, authorized the judgment.

The judgment should be affirmed, with costs.

VAN BRUNT, P. J., and O'BRIEN, J., concurred.

Judgment affirmed, with costs.